UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN REGINALD SHAW,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>STU SHERMAN, et al.,<br><br>　　　　　　　　　Respondents. | Case No.: 20-cv-1875-GPC (DEB)<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d)(4) and HC.2(a).

**I.　　INTRODUCTION**

On September 21, 2020, Petitioner Shaun Reginald Shaw filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his July 31, 2017 conviction and sentence in San Diego Superior Court. Dkt. No. 1. Petitioner raises two ineffective assistance of counsel claims, a *Brady* claim, and an actual innocence claim. *Id.* at 6–21. Petitioner also requests the Court "fashion a[n] order to bring forth [video footage evidence]." *Id.* at 17.

On December 15, 2020, Respondent filed an Answer and lodged the state court record. Dkt. Nos. 7, 8. On March 1, 2021, Petitioner filed a Traverse. Dkt. No. 11. On April 26 and 28, 2021, the parties submitted supplemental briefing. Dkt. Nos. 13, 14.

Having considered the Petition, Answer, Traverse, supplemental briefs, and all supporting documents, the Court **RECOMMENDS DENYING** the Petition for Writ of Habeas Corpus.

## II.     FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal's January 7, 2019 Opinion on Rehearing in *The People of the State of California v. Shaun Reginald Shaw* (Case No. D072841):[1]

> Shaw and William were introduced to each other by a mutual friend about three weeks before the incident underlying this case. Shortly after they met, Shaw asked if he could store cars on William's property. William was hesitant but said he would think it over. They did not reach an agreement. Nevertheless, over the next few days, Shaw had three cars towed to and deposited in William's driveway. At each instance, William protested. Shaw responded by offering him various payments, some of which were accepted and some of which were not.
>
> After the third and final car—by far the nicest of the three—was dropped off, William tried rather unsuccessfully to reach Shaw over the phone and by text message in the ensuing weeks. He implored Shaw to remove the cars. He told Shaw that one of the cars was apparently tampered with and disclaimed all responsibility for their condition. All of his text messages went unanswered. William eventually enlisted the help of a friend to tow the third, nicest car away. The other two remained onsite.

---

[1] Absent clear and convincing evidence to the contrary, the Court defers to the state court's factual determinations and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

2

> It was around noon either that same day or the next that William was in his kitchen cooking when he heard a loud noise come from the direction of his front door. Shaw burst through it, stumbling onto the ground and holding a hatchet. He advanced toward William, wielding the hatchet with his right hand and threatening, "'Where's my mother fucking cars? I'm going to kill your ass.'" The hatchet grazed William's lip as Shaw swung it up and down.
>
> Shaw wrapped William in what is repeatedly described in the record as a "bear hug," and pushed him from the kitchen to the living room, all the while hitting him and again threatening to "'kill [his] ass'" if the cars were not returned. With William now pinned to the ground, Shaw continued to punch him from above. He was still holding but no longer swinging the hatchet. William grabbed for it, and a struggle over its possession ensued.
>
> Amid the tussle, William yelled to his girlfriend (who was in the bedroom) to call the police. Hearing that, Shaw stood and warned, "'I have a gun.'" William stood too, having somehow prevailed in the contest for the hatchet. He thought Shaw was bluffing about the gun, so he challenged him to go get it and cautioned, "'You did everything wrong today.'"
>
> William then hurried out of the house, now wearing only one shoe and holding the hatchet, his phone, and the fork he was cooking with before Shaw's unexpected entrance. As he fled, he passed an SUV in his driveway with an individual inside he had seen once prior with Shaw. William knocked on one or two neighbors' doors before one answered. That neighbor called the police, and law enforcement responded shortly thereafter. Although he had blood on his lip, William refused medical treatment. His lip eventually scarred.

Dkt. No. 8-16 at 3–5.

### III. PROCEDURAL BACKGROUND

On March 8, 2017, the People of the State of California ("State") filed a three-count Complaint in the San Diego County Superior Court charging Petitioner with: (1) Burglary, in violation of Penal Code §§ 459 and 460; (2) Assault with Deadly Weapon, in violation

of Penal Code § 245(a)(1); and (3) Making a Criminal Threat, in violation of Penal Code § 422. Dkt. No. 8-1 at 7–13. On June 6, 2017, the State amended the Complaint and added three additional charges: (4) Take and Drive a Stolen Vehicle, in violation of Vehicle Code § 10851(a); (5) Buy and Receive a Stolen Vehicle, in violation of Penal Code § 496(d); and (6) Hit-Run Driving, in violation of Vehicle Code § 20002(a). *Id.* at 49–55, 191.

On July 31, 2017, following a three-day trial, a jury convicted Petitioner on Counts 1, 2, and 3, and acquitted on Counts 4, 5, and 6. Dkt. No. 8-1 at 127–133. On August 24, 2017, the Superior Court sentenced Petitioner to twenty-one years (inclusive of a five-year enhancement under Penal Code § 667(a)(1)). Dkt. No. 8-1 at 178.

Petitioner appealed, arguing the Superior Court erred by: (1) "refus[ing] to permit defense counsel to demonstrate appellant writes with his left-hand and, by inference, is left-handed"; and (2) "imposing, rather than staying, the sentences on count 2 and 3." Dkt. No. 8-8 at 17, 31. On September 18, 2018, the California Court of Appeal rejected Petitioner's first argument, modified the judgment to "stay the terms imposed for assault with a deadly weapon . . . and making a criminal threat," and affirmed the judgment in all other respects. Dkt. No. 8-11 at 14 (internal citations omitted).

On November 15 and 19, 2018, the parties filed letter briefs in response to Petitioner's request for the Court of Appeal to consider the impact of Senate Bill No. 1393, which gave trial courts discretion to strike the five-year enhancement under Penal Code § 667(a)(1). Dkt. Nos. 8-14, 8-15. On January 7, 2019, the Court of Appeal issued an Opinion on Rehearing remanding the case for a resentencing hearing "where the [trial] court should exercise its discretion to decide whether to strike the five-year enhancement for [Petitioner's] serious prior felony under section 667, subdivision (a)(1)." Dkt. No. 8-16 at 17. On June 28, 2019, the Superior Court resentenced Petitioner to eighteen years. Dkt. No. 8-17 at 1.

On December 16, 2019, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court raising ineffective assistance of counsel and *Brady* claims. Dkt.

No. 8-18. On April 15, 2020, the California Supreme Court denied the petition. Dkt. No. 8-19.

On September 21, 2020, Petitioner filed the instant Petition. Dkt. No. 1. On December 15, 2020, Respondents filed an Answer asserting the state court's rejection of Petitioner's claims is not cognizable under federal habeas corpus. Dkt. No. 7-1. On March 1, 2021, Petitioner filed a Traverse asserting "significant violations" of Petitioner's "fundamental constitutional right[s]." Dkt. No. 11 at 2.

On April 7, 2021, the Court requested supplemental briefing on whether the California courts issued any decisions denying Petitioner's state petition. Dkt. No. 12. The parties' supplemental briefs confirmed Petitioner first filed his state petition in the California Supreme Court, which summarily denied his claims. Dkt. Nos. 13, 14.

## IV. STANDARD OF REVIEW

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq*. Under the AEDPA, a federal court will not grant a habeas petition challenging any matter adjudicated on the merits by a state court unless the decision was: (1) contrary to, or involved an unreasonable application of, clearly established federal law; or (2) an unreasonable determination of the facts based on the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Schriro v. Landrigan*, 550 U.S. 465, 473–477 (2007).

"Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). On habeas review, federal courts "presum[e] that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A state court's summary denial is presumed to be a merits determination "in the absence of any indication or state-law procedural principles to the contrary," and the deferential AEDPA standard of review applies. *Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also id.* at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no

reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.").

## V. DISCUSSION

Petitioner raises two ineffective assistance of counsel claims, a *Brady* claim, and an actual innocence claim. None entitle Petitioner to habeas relief.

### A. Ineffective Assistance of Counsel

Petitioner's ineffective assistance claims assert he was denied effective assistance of (1) trial counsel; and (2) appellate counsel.

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough*, 540 U.S. at 5. An ineffective assistance claim is cognizable on federal habeas review. *Id*. ("If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law . . . .'"); *see also Strickland v. Washington*, 466 U.S. 668, 697–98 (1984) ("An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, no special standards ought to apply to ineffectiveness claims made in habeas proceedings.") (citation omitted).

An ineffective assistance of counsel claim consists of two elements: (1) "deficient performance"; and (2) "prejudice." *Strickland,* 466 U.S. at 700. "Deficient performance" is "representation f[alling] below an objective standard of reasonableness." *Id.* at 688. Establishing deficient performance requires overcoming a "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689–90. Further, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. "The court must then determine whether, in light of all

the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Id.*

"Prejudice" is established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (deciding the "prejudice" component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). It is unnecessary to address both *Strickland* elements if a petitioner makes an insufficient showing on one. *Strickland,* 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *Rios v. Rocha,* 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

> *i. Petitioner Is Not Entitled to Habeas Relief Based on Ineffective Assistance of Trial Counsel*

Petitioner's ineffective assistance of trial counsel claim alleges: (i) Home Depot video footage exists; (ii) the footage would have shown Petitioner was at Home Depot when the crime took place; (iii) Petitioner told counsel about this footage; (iv) counsel did not subpoena Home Depot for the footage or "make any attempt to verify Petitioner's claim of alibi of whereabouts"; (v) an alibi defense was not presented at his trial; and (vi) this "result[ed] in an . . . unfair outcome in the proceedings." Dkt. No. 1 at 6–10. Petitioner also alleges his trial counsel failed to gather fingerprint evidence, take photographs of the crime scene, and discredit the victim at trial. *Id*. at 6–7.

A failure to adequately investigate may constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 691. Petitioner, however, does not demonstrate either deficient performance or resulting prejudice.

The record shows on March 27, 2017, Petitioner's Deputy Public Defender served Home Depot Loss Prevention's custodian of records a subpoena seeking "[a]ny and all video surveillance from February 18, 2017, 10 am – 3 pm." Dkt. No. 1 at 78–82 (Subpoena

Duces Tecum with executed proof of service). During trial, Petitioner's counsel stated, "Your Honor, I need to cover my bases and ask if there's any documents that are in the court file responsive to a defense subpoena. . . . We had subpoenaed some video from a Home Depot store." Dkt. No. 8-4 at 37. The court responded, "Okay. We will check." *Id.*

This record reflects trial counsel issued and followed up on the subpoena with the Superior Court. The Court, therefore, infers either: (1) Home Depot did not respond to the subpoena (e.g., because no video existed); or (2) Home Depot produced a video and counsel chose not to introduce it into evidence (e.g., because it did not corroborate Petitioner's alibi). There is nothing in the record, however, from which the Court could conclude Petitioner's trial counsel received, but did not introduce, exculpatory video footage. *See Royal v. Martel*, No. 08-cv-5628, 2010 WL 3932075, at *7 (N.D. Cal. Oct. 5, 2010) ("Even if counsel opted not to follow up on portions of [withdrawn counsel's] initial investigation, petitioner fails to demonstrate that this decision fell below an 'objective standard of reasonableness' under prevailing professional norms.").

Petitioner also claims his trial counsel did not collect fingerprints or take photographs "of things that looked out of place." Dkt. No. 1 at 6–8. Crime scene investigation, however, is not the job of a defense attorney, who typically is not retained or appointed until after the scene is cleared. Petitioner also does not argue and cannot establish resulting prejudice. The record reflects a crime scene specialist with San Diego Crime Scene Unit, "process[ed] the hatchet for latent fingerprints," and recovered prints. Dkt. No. 8-4 at 119, 122. Also, an officer testified he photographed the scene. Dkt. No. 8-4 at 96–97 (Q: "What photographs did you take besides the hatchet?" A: "From what I recall, it was photos of the scene, the house, some vehicles, the hatchet . . . photos of the victim as well."); *id.* at 99 (Q: "Did you take photographs of a house?" A: "Yes. . . . Because I was asked to take photographs at the scene."). Petitioner makes no allegation that the available fingerprints and photographs were incomplete or otherwise misleading, and nothing in the record supports a conclusion that Petitioner was prejudiced by anything his trial counsel did (or did not do) regarding this evidence.

Petitioner also alleges no medical reports corroborate the victim's story, and the victim fabricated his testimony. Dkt. No. 1 at 7. To the extent this argument relates to trial counsel's effectiveness,[2] trial counsel extensively cross examined the victim and attacked the victim's credibility in her closing argument.[3] The jury, whose verdict the Court may not second guess, rejected this defense. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[T]he assessment of credibility of witnesses is generally beyond the scope of [habeas] review.").

In sum, the Court finds the California court's rejection of Petitioner's ineffective assistance of trial counsel claim was neither contrary to nor an unreasonable application of clearly established federal law. The Court, therefore, recommends denying Petitioner's first ground for relief.

> ii. *Petitioner Is Not Entitled to Habeas Relief Based on Ineffective Assistance of Appellate Counsel*

Petitioner's second ground for relief alleges he "was denied effective assistance of appellate counsel, when counsel failed to raise[ ] ineffective [assistance] of trial counsel in appellate counsel opening brief." Dkt. No. 1 at 11.

The Sixth Amendment right to effective counsel extends to appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). However, "[i]f trial counsel's performance was not objectively unreasonable or did not prejudice [Petitioner], then appellate counsel did not

---

[2]   Although raised in Petitioner's first (ineffective assistance) claim, if it is evaluated as an innocence claim, it fails the "extraordinarily high" threshold discussed below.

[3]   *See, e.g.*, Dkt. Nos. 8-4 at 64 (Q: "The hatchet was swung at your face area? . . . And with that one swing, you said, he got you on the lip?"); *id.* at 71 (Q: "Did you get medical attention for your - -" A: "No, because I didn't feel I needed to." Q: "Did the police offer you medical attention? . . . Did you seek any medical treatment at any point at all?"); *id.* at 83 ("But you never told the operator that he hit you with that hatchet?"); 8-5 at 80 ("Now, you can use your common sense. If Mr. Shaw comes in busting down the door like a wild, angry savage with a hatchet, anybody, [William] or anybody's not going to leave there with a little slice to your lip. . . . It doesn't make sense.").

act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and [Petitioner] was not prejudiced by appellate counsel's omission." *Moormann v. Ryan*, 628 F.3d 1102, 1107 (9th Cir. 2010). As discussed, the Court finds no basis to conclude trial counsel's performance was ineffective. Petitioner's ineffective assistance of appellate counsel claim, therefore, also fails.[4]

The Court finds the California court's rejection of Petitioner's ineffective assistance of appellate counsel claim was not objectively unreasonable, and therefore, recommends denying Petitioner's second ground for relief.

### B. *Brady*

Petitioner's third ground for relief alleges "the failure of trial counsel in gathering available evidence necessary to support Petitioner's alibi of whereabouts violated *Brady v. Maryland*." Dkt. No. 1 at 12. Additionally, Petitioner asserts "the prosecutor had full knowledge about Petitioner's alibi of whereabouts, but [no one] made a[n] effort to gather the surveillance video footage." *Id*.

*Brady* applies to the prosecution and does not impose obligations on defense counsel. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."); *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) (The second element of a *Brady* violation is "that evidence must have been suppressed by the ***State***.") (emphasis added); *Chilcote v. Sherman*, No. 17-cv-0061-GPC (PCL), 2017 WL 6509575, at *15 (S.D. Cal. Dec. 20, 2017) (denying habeas claim

---

[4] Even if Petitioner could somehow establish trial counsel was ineffective, his claim that appellate counsel was ineffective by failing to raise this issue on direct appeal would likely still fail. Under California law, ineffective assistance of counsel claims typically are raised on collateral review, not on direct appeal. *See People v. Mendoza Tello,* 933 P.2d 1134, 1135 (1997) (ruling ineffective assistance of counsel claims are not proper on direct appeal unless the record illuminates all facts necessary to resolve the claim, including the basis for counsel's challenged decision or shortcoming).

that the trial court allegedly suppressed evidence as "clearly outside the realm of *Brady*"), *report and recommendation adopted in part*, 2018 WL 3584460 (July 26, 2018). In addition, other than the Home Depot footage (discussed above), Petitioner does not identify any alibi evidence trial counsel failed to present.

Petitioner's *Brady* claim also fails to the extent it implicates the prosecution. "While the prosecution must disclose any [*Brady*] information within the possession or control of law enforcement personnel, . . . it has no duty to volunteer information that it does not possess or of which it is unaware." *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir. 1985). In other words, "[n]o *Brady* violation occurs when the State does not have the information to disclose." *Evans v. McDaniel*, 4-cv-0562-ECR-VPC, 2008 WL 731560, at *8 (D. Nev. Mar. 17, 2008). Plaintiff has not identified any exculpatory evidence the prosecutor withheld.

The Court, therefore, recommends denying habeas relief on Petitioner's *Brady* claim.

### C. Actual Innocence

Petitioner's actual innocence claim is also premised on the alleged Home Depot video footage. Dkt. No. 1 at 12.

As a threshold matter, the Court addresses Respondent's arguments that Petitioner did not exhaust and has procedurally defaulted his actual innocence claim. Dkt. No. 7-1 at 13. A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings. 28 U.S.C. § 2254 (b)(1); *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "[A] petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with

a state procedural rule or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

The Court finds Petitoner's December 16, 2019 state petition, liberally construed, raised an actual innocence claim. *See, e.g.*, Dkt. No. 8-18 at 5 ("[S]urveillance video-footage from a Home-Depot store . . . would've proven that Petitioner was shopping at the time Petitioner was accused of committing the alleged crimes. . . . Petitioner alibi evidence would've exonerated Petitioner . . . ."). Although Petitioner's state petition does not contain a separate section labeled "actual innocence," he adequately raised the facts and arguments forming the basis for this claim. The Court, therefore, will consider Petitioner's actual innocence claim. *See White v. Cate*, No. 9-cv-2900-GEB-EFB, 2011 WL 345991, at *2 (E.D. Cal. Feb. 1, 2011) ("It appears that petitioner nowhere used the term '*ex post facto*' in his state habeas petition or referenced the Constitution's bar on retroactive application of criminal statutes, but the argument he presented is so similar in substance to the one he now seeks leave to exhaust, it raises the question whether such leave—and the concomitant stay—is necessary at all. Under the liberal reading due all pro se petitions, the court could construe the claim as having been exhausted and presented already.").

Actual innocence claims typically are based upon an independent constitutional violation. *See generally Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."). As Respondent notes (Dkt. No. 7-1 at 14), whether a federal court may consider a freestanding actual innocence claim is an open question. *See, e.g.*, *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71–72 (2009) (recognizing whether a federal constitutional right to be released upon proof of "actual innocence" exists "is an open question")*; House v. Bell*, 547 U.S. 518, 554–55 (2006) (expressly declining to resolve whether federal courts may entertain freestanding claims of actual innocence, stating only that the petitioner fell short of the "extraordinarily high" threshold suggested by the Court in *Herrera*); *Herrera*, 506 U.S. at 427 (1993) (O'Connor, J., concurring) (noting because "[p]etitioner has failed to make a persuasive

showing of actual innocence," "the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence").

If such a claim does exist, the Supreme Court noted a petitioner would have to meet an "extraordinarily high" and "truly persuasive" showing of actual innocence to obtain relief. *Herrera*, 506 U.S. at 417. The Ninth Circuit interpreted this "extraordinarily high" standard to mean a petitioner must show affirmative proof of innocence. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997).

Here, as discussed above, Petitioner has established no independent constitutional violation that renders his actual innocence claim other than freestanding. And any freestanding actual innocence claim fails because Petitioner submitted no affirmative proof of innocence. The Court, therefore, recommends denying Petitioner's actual innocence claim.

### D. Discovery

Petitioner requests the Court issue an order to "bring forth the surveillance Home-Depot store video-tape footage . . . ." Dkt. No. 1 at 17. The Court construes this as a request to conduct discovery.

A habeas petitioner is not presumptively entitled to discovery. *See Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir.1999) ("A habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant.") (citing *Bracy v. Gramley*, 520 U.S. 899, 903–05 (1997)). Rule 6(a) of the Rules Governing § 2254 Cases provides the court may, for good cause, allow discovery and may limit its scope. Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Rule 6(b) requires a party requesting discovery to provide reasons for the request and specify the information requested. "The availability of any discovery during a habeas

proceeding is committed to the sound discretion of the district court." *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993).

Petitioner has not shown good cause for discovery. As discussed above, Petitioner's trial counsel subpoenaed Home Depot for the footage, which, as discussed above, the Court infers either did not exist or did not corroborate Petitioner's alibi. Petitioner's allegations, therefore, do not "show reason to believe [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09; *see also Prentice v. Baker*, No. 10-cv-00743-RCJ, 2013 WL 1182065, at *2 (D. Nev. Mar. 19, 2013) ("Federal habeas discovery is not meant to be a fishing expedition for petitioners to explore their case in search of its existence.") (citing *Kemp v. Ryan,* 638 F.3d 1245, 1260 (9th Cir. 2011)). The Court, therefore, denies Petitioner's request to conduct discovery.

## VI. CONCLUSION & RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying Petitioner's Petition for a Writ of Habeas Corpus.

**IT IS ORDERED** that on or before **August 23, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties on or before **September 2, 2021**.

/ /
/ /
/ /
/ /
/ /
/ /
/ /

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  August 2, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge