1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11

| SHAUN REGINALD SHAW, | Case No.:  20CV1875-GPC(DEB) |

12

Petitioner,

13

**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

v.

14

STU SHERMAN,

15

Respondent.

16

17         Petitioner Shaun Reginald Shaw ("Petitioner") filed a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254 ("Petition") on September 21, 2020.  (Dkt. No. 1.)

19   On December 15, 2020, Respondent filed an answer and notice of lodgment of state court

20   records.  (Dkt. Nos. 7, 8.)  Petitioner filed a traverse on March 1, 2021.  (Dkt. No. 11.)

21   Magistrate Judge Daniel E. Butcher filed a report and recommendation ("R&R") denying

22   the petition for writ of habeas corpus on August 2, 2021.  (Dkt. No. 15.)  No objections

23   were filed.  For the reasons discussed below, the Court DENIES and DISMISSES the

24   petition for writ of habeas corpus and also DENIES a certificate of appealability.

25                              **Procedural Background**

26         On March 8, 2017, Petitioner was convicted by jury on one count of burglary in

27   violation of California Penal Code section 459, one count of assault with a deadly

28

1

weapon in violation of California Penal Code section 245(a)(1), and one count of making a criminal threat in violation of California Penal Code section 422. (Dkt. No. 8-1 at 7–13.[1]) Petitioner was acquitted on one count of taking and driving a vehicle in violation of California Vehicle Code section 10851(a), one count of buying and receiving a stolen vehicle in violation of California Vehicle Code section 496(d), and one count of hit-run driving in violation of California Vehicle Code section 20002(a). *(Id.* at 49–55, 191). On August 24, 2017, Petitioner was sentenced to twenty-one years in custody. (Dkt. No. 8-1 at 178.)

On December 15, 2017, Petitioner appealed his conviction. (Dkt. No. 8-8 at 17, 31.) On September 18, 2018, the court of appeal modified the judgment in part to "stay the terms imposed for assault with a deadly weapon . . . and making a criminal threat," and affirmed judgment in all other respects. (Dkt. No. 8-11 at 14.)

On November 15 and 19, 2018, the parties filed letter briefs in response to Petitioner's request for the court of appeal to consider the impact of Senate Bill No. 1393, which gave trial courts discretion to strike five-year enhancement under California Penal Code section 667(a)(1). (Dkt. Nos. 8-14; 8-15.) On January 7, 2019, the court of appeal issued an opinion remanding the case for a resentencing hearing "where the [trial] court should exercise its discretion to decide whether to strike the five-year enhancement for [Petitioner's] serious prior felony under section 667, subdivision (a)(1)." (Dkt. No 8-16 at 17.) On June 28, 2019, Petitioner was resentenced to eighteen years in prison. (Dkt. No. 8-17 at 1.)

On December 16, 2019, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Dkt. No. 8-18.) The California Supreme Court denied the petition. (Dkt. No. 8-19.)

---

[1] Page numbers are based on the CM/ECF pagination.

On September 21, 2020, Petitioner filed the instant petition for writ of habeas corpus. (Dkt. No. 1). He raises four claims: 1) ineffective assistance of trial counsel for failing to obtain exculpatory alibi evidence in violation of his Sixth Amendment right;  2) ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel in violation of his Sixth Amendment right; 3) a *Brady*[2] claim asserting that trial counsel failed to gather available evidence to support Petitioner's alibi and that the "[p]rosecutor had full knowledge about Petitioner's alibi of whereabouts" but failed to make an effort to obtain the surveillance video; and 4) an actual innocence claim.  (Dkt. No. 1, Pet. at 6, 11, 12, 18.) On December 15, 2020, Respondents filed an answer asserting the state court's rejection of Petitioner's claims was not neither contrary to or an unreasonable application of clearly established U.S. Supreme Court precedent and his actual innocence claim is not cognizable on federal habeas review.  (Dkt. No. 7-1 at 10-16.)  On March 21, 2021, Petitioner filed a traverse attaching a copy of his petition.  (Dkt. No. 11.)  The Magistrate Judge issued an R&R denying petition for writ of habeas corpus.  (Dkt. No. 15.)  Petitioner did not file an objection.

### Factual Background

This Court gives deference to state court findings of fact and presume them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The following facts are taken from the California Court of Appeal's January 7, 2019 Opinion on Rehearing in *The People of the State of California v. Shaun Reginald Shaw* (Case No. D072841):

> Shaw and William were introduced to each other by a mutual friend about
> three weeks before the incident underlying this case.  Shortly after they met,

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

Shaw asked if he could store cars on William's property. William was hesitant but said he would think it over. They did not reach an agreement. Nevertheless, over the next few days, Shaw had three cars towed to and deposited in William's driveway. At each instance, William protested. Shaw responded by offering him various payments, some of which were accepted and some of which were not.

After the third and final car—by far the nicest of the three—was dropped off, William tried rather unsuccessfully to reach Shaw over the phone and by text message in the ensuing weeks. He implored Shaw to remove the cars. He told Shaw that one of the cars was apparently tampered with and disclaimed all responsibility for their condition. All of his text messages went unanswered. William eventually enlisted the help of a friend to tow the third, nicest car away. The other two remained onsite.

It was around noon either that same day or the next that William was in his kitchen cooking when he heard a loud noise come from the direction of his front door. Shaw burst through it, stumbling onto the ground and holding a hatchet. He advanced toward William, wielding the hatchet with his right hand and threatening, "'Where's my mother fucking cars? I'm going to kill your ass.'" The hatchet grazed William's lip as Shaw swung it up and down.

 Shaw wrapped William in what is repeatedly described in the record as a "bear hug," and pushed him from the kitchen to the living room, all the while hitting him and again threatening to "'kill [his] ass'" if the cars were not returned. With William now pinned to the ground, Shaw continued to punch him from above. He was still holding but no longer swinging the hatchet. William grabbed for it, and a struggle over its possession ensued.

Amid the tussle, William yelled to his girlfriend (who was in the bedroom) to call the police. Hearing that, Shaw stood and warned, "'I have a gun.'" William stood too, having somehow prevailed in the contest for the hatchet. He thought Shaw was bluffing about the gun, so he challenged him to go get it and cautioned, "'You did everything wrong today.'"

William then hurried out of the house, now wearing only one shoe and holding the hatchet, his phone, and the fork he was cooking with before Shaw's unexpected entrance. As he fled, he passed an SUV in his driveway with an individual inside he had seen once prior with Shaw. William knocked on one or two neighbors' doors before one answered. That neighbor

4

called the police, and law enforcement responded shortly thereafter.
Although he had blood on his lip, William refused medical treatment. His lip
eventually scarred.

(Dkt. No. 8-16 at 3–5.)

## Discussion

### A.   Standard of Review of Magistrate Judge's Report and Recommendation

In reviewing a magistrate judge's report and recommendation, a district court "must make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980).

Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("We are therefore not persuaded that the statute positively requires some lesser review by the district court when no objections are filed."); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise"); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, de novo review of a R & R is only required when an objection is made to the R & R") (citing *Reyna-Tapia*, 328 F.3d at 1121); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (interpreting Ninth Circuit's decision in *Reyna–Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection").  Here, no objection was filed by Petitioner.  Therefore, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  See 28 U.S.C. § 636(b)(1)(C).

### B.   Standard of Review

The petition is governed by the provisions of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under

AEDPA, a habeas petition will not be granted unless the adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2)

resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see*

*also Early v. Packer*, 537 U.S. 3, 8 (2002).

      A state court's decision may be "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set forth in

[the Court's] cases" or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the] Court and nevertheless arrives at a result

different from [the Court's] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  A state court decision may involve an "unreasonable application" of clearly

established federal law, "if the state court identifies the correct governing legal rule from

this Court's cases but unreasonably applies it to the facts of the particular state prisoner's

case."  *Id.* at 407.  Under this clause, "a federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or incorrectly.  Rather,

that application must also be [objectively] unreasonable."  *Id.* at 409, 411; *see also*

*Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (unreasonable application must be

objectively unreasonable).  In other words, relief is available "if, and only if, it is so

obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014)

(quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  This is an extraordinarily

deferential standard of review.  *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the

United States Supreme] Court's decisions as of the time of the relevant state-court

decision."  *Lockyer*, 538 U.S. at 71-72.

The analysis of the state court's decision is significantly impeded when, as here, the state court did not provide a reasoned decision. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (citing *Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir. 2000)).  Thus, "[w]e 'cannot perform our evaluation under the models suggested by Justice O'Connor in *Williams*,' because we have 'no basis other than the record for knowing whether a state court correctly identified the governing principle or was extending the principle into a new context." *Himes*, 336 F.3d at 853 (quoting *Delgado*, 223 F.3d at 982).  *Delgado* instructs us to perform "an independent review of the record" and therefore, "[f]ederal habeas review is not *de novo*" in this instance.  *Delgado*, 223 F.3d at 982.  Independent review is "the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  The Court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99.

Therefore, even with a summary denial by a state court, section 2254(d) still applies and a petitioner must show "there was no reasonable basis" for the California Supreme Court's decision. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011).  Under these circumstances, "a habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

**C.   Ineffective Assistance of Trial Counsel**

In his first claim, Petitioner alleges ineffective assistance of counsel in violation of his Sixth Amendment right when trial counsel failed to obtain exculpatory surveillance video from a Home Depot store that would have shown that he was at the store at the time of the incident.  (Dkt. No. 1, Pet. at 6.)  Respondent maintains the state court's rejection of Petitioner's arguments regarding his trial counsel was neither contrary to, nor

7

an unreasonable application of, clearly established Supreme Court precedent and is entitled to deference.[3]  (Dkt. No. 7-1 at 13.)

Here, the California Supreme Court summarily denied Petitioner's claims without providing any reasoning behind its decision.  (Dkt. No. 8-19 at 1.)  Thus, an independent review of the state court record must be performed to determine whether the state court's decision was objectively unreasonable.  *See Himes*, 336 F.3d at 853.

To establish ineffective assistance of counsel ("IAC"), a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  He must also show he was prejudiced by counsel's errors.  *Id*. at 694.  Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

Further, *Strickland* requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential."  *Strickland,* 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Id*. at 686-87.  Therefore, Petitioner "must rebut this presumption by proving that his attorney's

---

[3] Petitioner makes inconsistent arguments.  First, he argues that his trial counsel failed to make any attempt to get a subpoena of the Home Depot video, (Dkt. No. 1, Pet. at 8), yet he provides a subpoena duces tecum submitted by defense counsel on March 24, 2017 which was served on Home Depot on March 27, 2017.  (*Id.* at 78-81.) Second, he argues the subpoena duces tecum form was left blank and unsigned causing it to be invalid and not honored by the superior court, (*id*. at 13); however, the unsigned declaration is attached to the subpoena for Home Depot's custodian of records to complete and does not render the subpoena tecum invalid.  Ultimately, Petitioner argues that his trial counsel failed to obtain the alleged exculpatory video from Home Depot.  The Court notes that Respondent fails to address the claim that trial counsel failed to obtain the Home Depot video.

representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697.

For an ineffective assistance of counsel claim, a habeas court's review of a state court decision is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Cullen*, 563 U.S. at 190 ("We take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d)'.").

In applying the "doubly deferential standard,"

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011); *see also Knowles*, 556 U.S. at 123 ("the question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

On a claim for counsel's failure to obtain exculpatory evidence, Petitioner must provide some independent, corroborating evidence, other than his own assertions, that the alleged exculpatory evidence of the Home Depot video existed and if it existed, it would have supported his alibi. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (finding petitioner's own self-serving statements insufficient to support IAC claim

without corroborating evidence); *Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (no ineffective assistance of counsel for failure to interview or call an alleged alibi witness where petitioner did not identify an actual witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (*same*); *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995) (finding no prejudice under *Strickland* based on counsel's failure to obtain and present "marginally relevant and indirectly beneficial evidence"), *cert. denied*, 517 U.S. 1111 (1996); *United States v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing); *Bragg v. Galaza*, 242 F.3d 1082, 1088-89 (9th Cir.), *amended on denial of rehearing by* 253 F.3d 1150 (2001) (mere speculation that evidence might be helpful insufficient to establish ineffective assistance of counsel); *cf. Rios v. Rocha*, 299 F.3d 796, 813 (9th Cir. 2002) (finding *Strickland* prejudice where counsel failed to investigate "strong, unequivocal, exculpatory evidence" available from five potential witnesses).

In this case, according to the trial court record, defense counsel issued a subpoena duces tecum which was served on Home Depot on March 27, 2017.  (Dkt. No. 1, Pet. at 78-79.)  The next reference to the subpoena occurred four months later during trial when defense counsel stated, "Your Honor, I need to cover my bases and ask if there's any documents that in the court file responsive to a defense subpoena. . . .We had subpoenaed some video from a Home Depot Store."  (Dkt. No. 8-4 at 73.)  The trial court responded, "Okay. We will check."  *Id*.  The record indicates there was no further follow up.

After the trial, on August 19, 2019, in response to an inquiry by Petitioner seeking the Home Depot video, the San Diego Superior Court wrote that within the past three

years, there was nothing received from Home Depot on his case.  (Dkt. No. 1, Pet. at 76.)
In preparation for filing his habeas petitions, Petitioner wrote to his trial counsel asking
counsel to follow up with Home Depot, and on June 26, 2019, trial counsel responded, "I
explained to you in the letter and again in our visit that I can't tell you why Home Depot
never provided the video. Your alibi witness that you said was with you at Home Depot
was interviewed and he said he was not with you at Home Depot."  (Dkt. No. 1, Pet. at
110.)  This letter was not provided to the California Supreme Court, but it was referenced
in his petition.  (Dkt. No. 8-18, Lodgment 13 at 30.)

Even if counsel's failure to obtain the Home Depot video was deficient, Petitioner
has failed to demonstrate he was prejudiced.  Besides Petitioner's own claim that he was
at Home Depot at the time of the incident, he fails to provide any independent and
corroborating evidence that the Home Depot video actually existed and if it did, it would
have shown him at Home Depot at the time of the incident.  *See Jackson v. Calderon*, 211
F.3d 1148, 1155 (9th Cir. 2000) (assuming that counsel's failure to investigate hospital
statements fell below *Strickland*'s competence standard but because the petitioner wholly
failed to show any investigation would have revealed any sources, he failed to
demonstrate he was prejudiced).

Moreover, at trial, there was evidence that placed Petitioner at the crime scene.
The victim identified Petitioner as the perpetrator.  (Dkt. No. 8-3, Lodgment 2 at 96, l.
14-26.)  There was also evidence that, despite the victim's hesitation, Petitioner had
stored three cars on the victim's property, that on the day of the incident or the day
before, the victim left voicemails and text messages demanding Petitioner remove the
cars and informing him that one of the cars had been tampered with. (Dkt. No. 8-3,
Lodgment 2 at 101-121, l 14-2.)  Therefore, based on this trial court record, the
California Supreme Court's ruling summarily denying his petition was not objectively
unreasonable.  *See Burns v. Jones*, No. C07-0040-RAJ, 2008 WL 149148, at *9 (W.D.
Wash. Jan. 9, 2008) ("The failure to obtain exculpatory evidence that cannot be found is
not ineffective assistance of counsel."); *Ledbetter v. Yates*, No. 2:11–cv–01022–JKS,

2012 WL 3528140, at *8-9 (E.D. Cal. Aug. 15, 2012) (no IAC on argument that trial counsel failed to interview two material witnesses, who would corroborate the fact that he was not at the scene of the crime, and misstated the testimony of the victim).

Because Petitioner has failed to demonstrate the prejudice prong, his ineffective assistance of counsel claim is without merit. Accordingly, the Court ADOPTS the R&R and DENIES habeas relief on this ground.

**D.    Ineffective Assistance of Appellate Counsel**

In his second claim, Petitioner alleges ineffective assistance of appellate counsel in violation of his Sixth Amendment rights when "counsel failed to raise[ ] ineffective [assistance] of trial counsel in appellate counsel opening brief." (Dkt. No. 1, Pet. at 11). Respondent maintains that because Petitioner has not shown that trial counsel was deficient, his related claim that appellate counsel was deficient for failing to raise this issue on appeal also fails. (Dkt. No. 7-1 at 13.)

Here, the California Supreme Court summarily denied Petitioner's claims without providing any reasoning behind its decision. (Dkt. No. 8-19 at 1.) Thus, an independent review of the state court record must be performed to determine whether the state court's decision was objectively unreasonable. *See Himes*, 336 F.3d at 853.

The Sixth Amendment right to effective counsel extends to appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Tamplin v. Muniz*, 894 F.3d 1076, 1090 (9th Cir. 2018). To establish ineffective assistance of appellate counsel for failing to bring a claim of ineffective counsel against trial counsel, the district must first determine whether trial counsel provided constitutionally deficient representation. *Moorman v. Ryan*, 628 F.3d 1102, 1106-1107 (9th Cir. 2010). "If trial counsel's performance was not objectively unreasonable *or* did not prejudice [Petitioner], then appellate counsel did act unreasonably in failing to raise a meritless claim of ineffective counsel, and [Petitioner] was not prejudiced by appellate counsel's omission." *Moorman*, 628 F.3d at 1107; *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellant counsel's failure to raise a claim on direct appeal does not constitute ineffective assistance when appeal

would not have granted grounds for reversal."); *Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) ("A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court.").

As discussed, the Court concluded the state court's decision summarily denying his ineffective assistance of trial counsel claim was not objectively unreasonable.  Therefore, Petitioner's claim of ineffective assistance of appellate counsel also fails and the California Supreme Court's rejection of Petitioner's ineffective assistance of appellate counsel was also not objectively unreasonable.  *See Pollard*, 119 F.3d at 1435.

Petitioner also argues that even though he informed appellate counsel about the IAC claim and asked her to raise it on direct appeal, she failed to raise it in the opening brief.  (Dkt. No. 1, Pet. at 11.)  According to letter correspondence, his appellate counsel informed him that IAC claims are not typically raised on direct appeal but raised in a petition for writ of habeas corpus.  Ineffective assistance of counsel claims should only be brought on direct appeal "in those rare instances where there is no conceivable tactical purpose for counsel's actions."  *People v. Lopez*, 42 Cal. 4th 960, 972 (2020).  Here, Petitioner has failed to show that there was no tactical purpose for his trial counsel's actions and his trial counsel even stated that the alibi witness had stated he was not with Petitioner, potentially leading her to believe a further fishing expedition for the video would be fruitless. (Dkt. No. 1, Pet. at 110.)

Accordingly, the Court ADOPTS the R&R and DENIES Petitioner's claim of ineffective assistance of appellate counsel.

**E.** ***Brady* Claim**

Petitioner's third ground for relief alleges "the failure of trial counsel in gathering available evidence necessary to support Petitioner's alibi of whereabouts violated *Brady v. Maryland*."  (Dkt. No. 1, Pet. at 12.) Additionally, Petitioner asserts "the prosecutor had full knowledge about Petitioner's alibi of whereabouts, but [no one] made a[n] effort

to gather the surveillance video footage."  (*Id.*) According to Petitioner because evidence favorable to him was suppressed, a *Brady* violation occurred.  (*Id.* at 13.)

A *Brady* claim only applies to the prosecution and does not impose obligations on defense counsel.  *See Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment.").  In order to be successful on a *Brady* claim, a petition must satisfy three components: (1) "the suppressed evidence must be favorable to the accused"; (2) "the evidence must be suppressed by the government, either willfully or inadvertently"; and (3) "the suppressed evidence must be material to the guilt or innocence of the defendant." *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (citations omitted).  The prosecution "has no duty to volunteer information that it does not possess or of which it is unaware."  *United States v. Hsieh Huh Mei Chen*, 754 F.2d 817, 824 (9th Cir. 1985).

Here, Petitioner has failed to demonstrate that the prosecution was in possession of the video; in fact, he implicitly claims that Home Depot was in possession of the video. Accordingly, the Court finds that the California Supreme Court's denial of Petitioner's *Brady* claim was not objectively unreasonable. Accordingly, the Court ADOPTS the R&R and DENIES habeas relief on this ground.

**F.   Actual Innocence**

Petitioner's actual innocence claim is also premised on the alleged Home Depot video footage. (Dkt. No. 1, Pet. at 18.) Respondent argues that the actual innocence claim is unexhausted, not cognizable, and even if cognizable, Petitioner has failed to make a showing of actual innocence.  (Dkt. No. 7-1 at 14.)

As a threshold matter, the Court addresses Respondent's argument that Petitioner did not exhaust and has procedurally defaulted his actual innocence claim. (Dkt. No. 7-1 at 13.)  A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through direct appeals or collateral proceedings.  28 U.S C. § 2254 (b)(1); *Rose v. Lundy*, 455 U.S. 509, 515 (1982).  "If petitioner fails to present his

federal claims to the state's highest court, and if he is procedurally barred from presenting those claims to the appropriate state court at the time of the filing of his federal habeas petition, the petitioner's claims are considered procedurally defaulted for purposes of federal habeas review." *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

The Court finds Petitioner's December 16, 2019, state petition liberally construed, raised an actual innocence claim. *See, e.g.*, Dkt. No. 8-18 at 5 ("[S]urveillance video footage from a Home Depot store . . . would've proven that Petitioner was shopping at the time Petitioner was accused of committing the alleged crimes . . . Petitioner alibi evidence would've exonerated Petitioner . . .). Although Petitioner's state petition does not contain a separate section labeled "actual innocence," he adequately raised the facts and arguments forming the basis for this claim. The Court, therefore, will consider Petitioner's actual innocence claim. *See White v. Cate*, No. CIV-09-2900-GEB-EFB, 2011 WL 345991, at *1, 9 (E.D. Cal. Feb. 1, 2011) ("It appears that petitioner nowhere used the term '*ex post facto*' in his state habeas petition . . . but the argument presented is so similar in substance to the one he now seeks leave to exhaust . . . Under the liberal reading due to all pro se petitions, the court could construe the claim as having been exhausted and presented already.").

Claims of actual innocence are generally not a ground for federal relief "absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). The United States Supreme Court and the Ninth Circuit has not yet held that a free-standing actual innocence claim is cognizable in a federal non-capital habeas petition. *See Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009) (whether there is a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question"); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Gimenez v. Ochoa*, 821 F.3d 1136, 1143 (9th Cir. 2016) ("The Supreme

Court has never recognized 'actual innocence' as a constitutional error that would provide grounds for relief without an independent constitutional violation."); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable."). Given the disruptive effect entertaining claims of actual innocence would need . . . the threshold for showing such an assumed right "would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. The Ninth Circuit has interpreted this "extraordinarily high" standard to mean a petitioner must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997).

Here, as discussed above, Petitioner has failed to establish an independent constitutional violation outside the claims addressed and denied above that renders his actual innocence claim other than freestanding. Petitioner has also failed to meet the extraordinarily high standard for free standing actual innocence claims by providing affirmative proof that he is "probably innocent." *See id.* While he claims video exists that would prove he was innocent, he has not provided the video itself nor any other exculpatory evidence. Accordingly, the Court ADOPTS the R&R and habeas relief on this ground is DENIED.

## G.   Request for Discovery

Petitioner requests the Court issue an order to "bring forth the surveillance Home Depot store video-tape footage." (Dkt. No. 1, Pet. at 17.) The Court construes this as request to conduct discovery.

A habeas petitioner is not entitled to the presumptive entitlement to discovery as would a traditional civil litigant. *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999) (citing *Bracy v. Gramley*, 520 U.S. 899, 903-05 (1997)). Rule 6(a) of the Rules Governing § 2254 Cases provides the court may, for good cause, allow discovery and may limit its scope. 28 U.S.C. § 2254. Good cause exists "where specific allegations

before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.  *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  Rule 6(b) requires a party requesting discovery to provide reasons for the request and specify the information requested.  "The availability of any discovery during a habeas proceeding is committed to the sound discretion of the district court."  *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993).

Here, Petitioner has failed to show good cause for discovery.  Petitioner has failed to show that it is likely for the video to exist more than five and a half years after the crime.  Further, given the fact that it was not produced by Home Depot at the time of trial suggests that it never existed or could not be located.  Finally, there is more reason to believe the video did not exist given the fact that the person Petitioner claims accompanied him at Home Depot denied he was with him.  Therefore, because Petitioner has failed to show that a proper investigation would prove the existence of the Home Depot surveillance video, he has failed to demonstrate that he is "entitled to relief." *Bracy*, 520 U.S. at 908-09.  Habeas is meant to correct obvious wrongs, not to act as "a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" *Rich*, 187 F.3d at 1067 (quoting *Calderon v. U.S.D.C (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)).  Accordingly, the Court DENIES his request for discovery.

## H.      Certificate of Appealability

Under AEDPA, a state petitioner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must show that "reasonable jurists would find the district's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

20CV1875-GPC(DEB)

1    The Court concludes that Petitioner has not made a substantial showing of a denial

2  of a constitutional right.  Accordingly, the Court DENIES a certificate of appealability.

3                                    **Conclusion**

4    Based on the reasoning above, the Court ADOPTS the report and recommendation

5  and DENIES and DISMISSES the petition for writ of habeas corpus pursuant to 28

6  U.S.C. § 2254 and DENIES a certificate of appealability.

7    IT IS SO ORDERED.

8  Dated:  October 13, 2022

9                              Hon. Gonzalo P. Curiel

10                             United States District Judge

20CV1875-GPC(DEB)